James Weiler; AZ Bar No. 034371
Michael Zoldan; AZ Bar No. 028128
Jessica Miller; AZ Bar No. 031005
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
jweiler@zoldangroup.com
mzoldan@zoldangroup.com
jmiller@zoldangroup.com

Attorneys for Plaintiff
Patti King

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Patti King**, an Arizona resident, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **Diamond Resorts International Marketing, Inc.,** a Delaware Corporation, | **(Jury Trial Requested)** |
| Defendant. | |

Plaintiff Patti King ("**Plaintiff**"), for her Complaint against Defendant Diamond Resorts International Marketing, Inc., ("**Defendant**") hereby alleges as follows:

## **PARTIES**

1. Plaintiff is, and at all times relevant hereto was, a resident of Yavapai County, Arizona.

2. Upon information and belief, Defendant is a Delaware Corporation, which is registered to conduct business and is currently doing business in the State of Arizona.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et. seq.* ("FMLA").

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. Plaintiff's state law claims are sufficiently related to her federal claims that it forms the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. The employment practices complained herein occurred in Yavapai County, Arizona.

7. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

8. Plaintiff was, at all relevant times, an employee of Defendant.

9. At all relevant times, Defendant has continuously been an employer, employing fifteen or more employees within the meaning of Title VII and the Arizona Civil Rights Act, A.R.S. §41-1461 *et seq.* ("ACRA").

10. At all relevant times, Defendants have continuously been an employer of more than 50 employees, are an employer for the purposes of the FMLA, and are subject to FMLA requirements.

11. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

## FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff, a female, was an employee of Defendant at their Sedona Summit location.

13. Plaintiff was consistently one of Defendant's top performing Vacation Counselors.

14. Plaintiff was qualified to perform the functions of her job and at all times relevant performed them satisfactorily.

15. During her employment with Defendant, Ms. King was discriminated against, degraded and humiliated by her male co-workers and in particular her Director of Sales, James Shosted.

16. Defendant would treat male employees better than female employees.

17. Defendant would give preferential treatment to male employees when it came to selecting work schedules, requesting time off, and giving out awards to salespersons.

18. For example, when the top salespersons would go on their reward trip, Mr. Shosted would only permit the male employees to take a vacation day to extend their trip.

19. Similarly, when it came time to request days off around the holidays the male employees were given first priority over the female employees in selecting their days off.

20. During meetings, the male managers would utilize videos of male athletes working out or make references about males that would make Plaintiff and other female employees feel uncomfortable and excluded.

21. Defendant, and in particular Mr. Shosted, would speak to female employees differently including being more hostile and physically intimidating towards female employees than he would towards male employees.

22. Beginning in November of 2017, Plaintiff requested and was approved by Defendant to utilize intermittent FMLA leave to care for her daughter who suffers from several medical conditions as a result of being drugged and raped at the age of 14.

23. Plaintiff often utilized intermittent FMLA in order to arrive to work a little late or leave on short notice if her daughter was having an issue at school.

24. From November 2017 through March of 2018 it became clear that Mr. Shosted disapproved of Plaintiff's use of FMLA leave.

25. On March 30, 2018, Mr. Shosted verbally berated and physically intimidated Plaintiff during a one on one meeting in Mr. Shosted's office. This verbal beratement and hostile confrontation lasted for hours.

26. Mr. Shosted confronted and berated Plaintiff because of her use of FMLA leave. Mr. Shosted accused Plaintiff of abusing FMLA, that her reason for using FMLA was "bullshit", and that her FMLA leave was costing Plaintiff and him money.

27. Mr. Shosted's comments led Plaintiff to believe that her continued use of FMLA leave would result in adverse employment actions including a reduction of her paycheck.

28. During this meeting, Mr. Shosted became visibly angry, started yelling, used profane language and made extreme and outrageous comments about Plaintiff and her daughter.

29. Mr. Shosted repeatedly stated that Plaintiff's use of FMLA was "bullshit."

30. Plaintiff attempted to explain to Mr. Shosted her daughter's conditions and why she needed to utilize FMLA.

31. In response, Mr. Shosted shouted Plaintiff down and exclaimed that her daughter's PTSD and several other chronic stress related illnesses after being drugged and raped were "bullshit."

32. Mr. Shosted went on to further belittle Plaintiff and dismiss her daughter's medical conditions by stating that another male co-worker's child had a real disability and that Plaintiff did could not know what it was like for that male co-worker to deal with not knowing whether the child will live or die because of an illness.

33. Plaintiff again attempted to explain the severity of her daughter's condition, that she did not have doorknobs in her home because she did not know if her daughter might attempt to harm herself or have night terrors and flashbacks.

34. Again, Mr. Shosted exclaimed that Plaintiff's daughters' condition was "bullshit" and that, "all teenagers like to sleep in", so there is no reason for her to adjust her work schedule.

35. During this conversation Mr. Shosted also asserted that Plaintiff's FMLA was running out and stated, "what are you going to do then?" in a threatening manner.

36. After about an hour of being berated, Plaintiff got up and attempted to leave. In response, Mr. Shosted threatened her stating "sit back down, I am still your boss and I can write you up for insubordination."

37. At the conclusion of the confrontation Mr. Shosted stood up, said happy birthday, and walked away.

38. Mr. Shosted's conduct was so extreme and outrageous that it left Plaintiff in

tears as a result of the severe emotional distress. Plaintiff felt victimized by Mr. Shosted because she is a single mom responsible for the care of a daughter with serious health issues as well as fearing for her own personal safety and future financial well-being.

39. Mr. Shosted never berated a male employee for using intermittent FMLA leave.

40. Mr. Shosted would not have berated Plaintiff for using FMLA if she was a male.

41. After the confrontation, Plaintiff was anxious and scared to be in the presence of Mr. Shosted.

42. As a result of Mr. Shosted's conduct, Plaintiff had to seek medical treatment for her severe emotional distress. Plaintiff was prescribed medications to treat her symptoms.

43. After leaving the meeting, Plaintiff informed her other Manager, Kory, that she was scared of Mr. Shosted and wanted to transfer to a different one of Defendant's properties in the Sedona area.

44. Plaintiff then spent the next few days attempting to avoid Mr. Shosted or off of work.

45. On April 6, 2018, Plaintiff left a voicemail for Defendant's HR department in an attempt to report Mr. Shosted's conduct.

46. On April 10, 2018, Plaintiff met with Defendant's HR representative Cindy Maldonado and detailed what occurred on March 30, 2018.

47. During this conversation, Ms. Maldonado stated that if Los Abrigados Property Manager David Ramos was on board, Plaintiff could transfer to Defendant's Los

Abrigados property.

48. Later that day, Plaintiff confirmed with David Ramos that he approved of her transfer to the Los Abrigados property.

49. Plaintiff and Mr. Ramos met with Ms. Maldonado and informed them of his approval. Ms. Maldonado then stated that all she would need to finalize the transfer was Mr. Shosted's approval.

50. Plaintiff and Mr. Ramos then informed Mr. Shosted's boss, Mr. Polsinelli, of the Plaintiff's intention to transfer to a different property.

51. In response, Mr. Polsinelli stated that he would not allow Plaintiff to transfer and he did not care what situation had occurred in the workplace. Mr. Polsinelli further exclaimed that if there really was a reason to let her transfer that she would have to transfer to Defendant's Ridge property and not Los Abrigados.

52. Plaintiff attempted to explain to Mr. Polsinelli that she did have a situation and that she could not transfer to the Ridge because it was too far away from her daughter whom she had to care for. In response, Mr. Polsinelli raised his voice and stated, I don't care, that is too bad.

53. As a result of the severe emotional distress, Plaintiff went to her treating physician and was order off of work for 2 days.

54. On April 12, 2018, Plaintiff called Ms. Maldonado again and informed her of what had transpired. During this phone call, Ms. Maldonado informed Plaintiff that she can either return to work at the Summit or take FMLA leave while they further investigate this matter.

55. When Plaintiff protested being put on unpaid FMLA leave for two to three

weeks while Defendant investigated that issue, Ms. Maldonado stated that she could also use her paid vacation and leave time if she wished.

56. Plaintiff questioned Ms. Maldonado if it was appropriate to use FMLA in this scenario since she was capable of working and vacation time because she was the victim of hostile actions towards her.

57. After this meeting, Plaintiff believed she had no choice but to remain off of work until Defendant concluded their investigation.

58. On April 12, 2018, Plaintiff drafted a detailed report of Mr. Shosted's conduct and implored Defendant to provide assistance.

59. Plaintiff explained in detail what Mr. Shosted had done to her and that she no longer felt safe working for him. Plaintiff pleaded with HR to provide a solution, such as transferring her to Los Abrigados, so that she would not have to return to her abuser to take further abuse.

60. On April 16, 2018, after being required to take paid time off or FMLA leave for several days, Ms. Maldonado informed Plaintiff that she could be temporarily assigned to Los Abrigados.

61. On April 17, 2018, Ms. Maldonado requested that Plaintiff meet with her before reporting to Los Abrigados for work. During this meeting, Ms. Maldonado informed Plaintiff that she could no longer be temporarily assigned to Los Abrigados and instead needed to transfer to the Ridge or return to the Summit under Mr. Shosted.

62. Plaintiff again explained to Ms. Maldonado that she could not transfer to the Ridge because of her daughter's medical condition. Ms. Maldonado stated that she would look into the issue further.

63. Plaintiff remained off of work while exhausting all of her paid time off and or utilizing unpaid FMLA leave for over 45 days without Defendant reporting to her the findings of their investigation or returning her to work in a safe environment.

64. During this time, Plaintiff was unable to earn salary or commission and was not paid for any of her residual commissions.

65. By forcing Plaintiff to take unpaid leave Defendant terminated her employment.

66. Mr. Shosted has a long history of discriminatory and inappropriate conduct in the workplace.

67. Defendant was aware of numerous complaints made against Mr. Shosted regarding his offensive and illegal conduct in the workplace.

68. Upon information and belief, Defendant had even removed Mr. Shosted from their Sedona properties following prior reports of his discriminatory, threatening, and inappropriate conduct.

69. Despite knowing that Mr. Shosted engaged in discriminatory, threatening and inappropriate conduct, Defendant continued to employ him and expose other employees, including Plaintiff, to discriminatory practices, threatening behavior and extreme and outrageous conduct.

70. Despite her diligent efforts, Ms. King has been unable to secure comparable employment since her employment was unlawfully severed by Defendant.

71. As a result of Defendant's conduct, Plaintiff has been damaged in an amount to be proven at trial.

# COUNT I
# GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

72. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

73. Plaintiff belongs to a protected class in that she is a female.

74. Plaintiff was qualified for her position as a Vacation Counselor.

75. Plaintiff was subjected to an adverse term of employment including termination.

76. Other employees outside of Plaintiff's protected class were treated more favorably.

77. Moreover, Plaintiff was subjected to a hostile work environment by Defendant because of her gender.

78. Plaintiff was subjected to gender-based discriminatory conduct that was unwelcome and sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

79. Defendant knew or should have known that Plaintiff was experiencing gender discrimination and failed to take remedial action to prevent or promptly correct the harassment.

80. Defendant is vicariously liable for the hostile work environment created by Plaintiff's supervisors and co-workers.

81. As a result, Plaintiff was harmed in an amount to be proven at trial.

# COUNT II
# RETALIATION IN VIOLATION OF TITLE VII

82. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if

restated herein.

83. Plaintiff engaged in protected conduct when she made complaints to Defendant opposing discrimination against her

84. Because of her complaints, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

85. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT III
## GENDER DISCRIMINATION IN VIOLATION OF THE ACRA

86. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

87. The Arizona Civil Rights Act, A.R.S. §41-1463(B)(1)(2), prohibits discrimination on the basis of sex.

88. Plaintiff belongs to a protected class in that she is a female.

89. Plaintiff was subjected to an adverse term of employment, including discrimination and termination because of her sex.

90. Other employees outside of Plaintiff's protected class were treated more favorably.

91. Plaintiff was subjected to a hostile work environment by Defendant because of her sex.

92. Plaintiff was subjected to sex-based discriminatory conduct that was unwelcome and sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

93. Defendant knew or should have known that Plaintiff was experiencing sex-

based discrimination and failed to take remedial action to prevent or promptly correct the harassment.

94. Defendant is vicariously liable for the hostile work environment created by its employees.

**95.** Plaintiff's working conditions were so intolerable, as a result of the unlawful discrimination and harassment, that a reasonable person would have been forced to resign.

96. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

97. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ACRA

98. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

99. The Arizona Civil Rights Act, A.R.S. §41-1464(A) prohibits retaliation against an employee who opposes a practice forbidden by the ACRA.

100. Plaintiff belongs to a protected class in that she is a woman.

101. Plaintiff engaged in protected conduct when she made complaints to Defendant opposing discrimination against her.

102. Because of her complaints, Plaintiff was subjected to adverse employment actions including, *inter alia*, assault and termination.

103. Plaintiff's working conditions were so intolerable, as a result of the unlawful discrimination, harassment and retaliation, that a reasonable person would have been forced to resign.

104. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

106. At all relevant times, Mr. Shosted was an employee of Defendant.

107. At all relevant times, Mr. Shosted was acting in the course and scope of his duties as an employee or agent of Defendant.

108. Mr. Shosted's conduct was intentional or reckless.

109. Mr. Shosted's conduct was extreme and outrageous.

110. Mr. Shosted's conduct was intentional or reckless.

111. Mr. Shosted intended to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct.

112. Mr. Shosted's conduct caused Plaintiff severe emotional distress.

113. As a result, Plaintiff was damaged in an amount to be proven at trial.

## COUNT VI
## NEGLIGENT SUPERVISION/RETENTION

114. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

115. At all relevant times, Mr. Shosted was an employee of Defendant.

116. Defendant owed a duty to exercise reasonable care in the supervision and retention of Defendant.

117. Defendant was negligent or reckless in the supervision of Mr. Shosted.

118. Defendant was negligent or reckless in permitting, or failing to prevent, negligent or other tortious conduct by its employee Mr. Shosted, upon the premises owned

or under the control of Defendant.

119. Defendant knew or should have known Defendant was discriminating against employees including Plaintiff and engaged in other tortious conduct towards employees including Plaintiff.

120. Defendant failed to prevent Mr. Shosted from discriminating against Plaintiff and engaging in other tortious conduct towards Plaintiff.

121. Defendant negligent supervision and retention of Mr. Shosted was a proximate cause of Plaintiff's injuries.

122. As a result, Plaintiff was damaged in an amount to be proven at trial.

## COUNT VII
## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

123. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

124. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right under the FMLA, 29 U.S.C. § 2615.

125. Defendant employs more than 50 employees and as such, is an employer for purposes of FMLA, subject to FMLA requirements.

126. Plaintiff was an "eligible employee" entitled to take leave pursuant to the FMLA.

127. Plaintiff provided sufficient notice of her need to take leave under the FMLA.

128. Defendant interfered with Plaintiff's medical leave by verbally berating her and threatening her for utilizing FMLA leave as well as mandating that she exhausts her FMLA leave for events that did not qualify for FMLA leave.

129. As a direct, intentional, and willful consequence of such illegal conduct,

Plaintiff suffered adverse employment actions including, *inter alia*, being verbally harassed, place on leave without pay and termination.

130. Plaintiff is entitled to recover damages against Defendants in an amount to be proven at trial.

## COUNT VIII
## RETALIATION IN VIOLATION OF THE
## FAMILY MEDICAL LEAVE ACT

131. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

132. Defendants employ more than 50 employees and as such, are an employer for purposes of the FMLA, subject to FMLA requirements.

133. Plaintiff was an "eligible employee" and entitled to take leave pursuant to the FMLA.

134. Plaintiff has a "serious health condition" as defined by the FMLA and was incapacitated as a result of that condition.

135. Plaintiff exercised her rights under the FMLA.

136. Defendant discriminated and retaliated against Plaintiff by, *inter alia*, verbally harassing, threatening, and terminating her employment.

137. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, *inter alia*, termination of employment.

138. Plaintiff is entitled to recover damages against Defendants in an amount to be proven at trial.

# CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court order such relief as is necessary to make her whole, including, without limitation:

A. Declaring the acts and practices complained of herein are in violation of Title VII, FMLA, the ACRA and Arizona state law;

B. An award of damages for all counts in an amount to be proven at trial;

C. An award of compensatory and punitive damages in an amount to be proven at trial;

D. An award of back pay and front pay (deferring to Title VII remedial structure allowing award of back pay and other equitable relief (*see* 42 U.S.C. § 2000e-5(g)(1));

E. Pre- and post-judgment interest;

F. Reasonable attorneys' fees, costs and other expenses; and

G. Any other remedies or judgments deemed just and equitable by this court.

# JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED January 15, 2019.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ James Weiler
14500 N. Northsight Blvd, Suite 133
Scottsdale, AZ 85260
Attorneys for Plaintiff